## IN THE UNITED DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CYNTHIA HOWRD FREEMAN,** ) <br> 260 Michele Circle ) <br> Millersville, MD 21108 ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **CITY OF ANNAPOLIS,** ) <br> City of Annapolis Office of Law ) <br> D. Michael Lyles, Esquire, City Attorney ) <br> 160 Duke of Gloucester Street ) <br> Annapolis, MD 21401 ) <br> Anne Arundel County ) <br> 160 Duke of Gloucester Street ) <br> Annapolis, MD 21403 ) <br> ) <br> and ) <br> ) <br> **MICHAEL PRESTOOP, FORMER POLICE CHIEF,** ) <br> *In his official capacity* ) <br> c/o Annapolis Police Department ) <br> 199 N. Taylor Avenue ) <br> Annapolis, MD 21401-3496 ) <br> ) <br> and ) <br> ) <br> **SCOTT BAKER, FORMER ACTING POLICE CHIEF,** ) <br> *In his official capacity* ) <br> c/o Annapolis Police Department ) <br> 199 N. Taylor Avenue ) <br> Annapolis, MD 21401-3496 ) <br> ) <br> **Defendants.** ) <br> _____ ) | **Civil Action No.:**_____ <br><br><br> **JURY TRIAL** |

## **COMPLAINT**

COMES NOW Plaintiff, Cynthia Howard Freeman by and through her undersigned counsel, Angela J. Davis, in accordance with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et. seq.* and brings this action against the Defendants for employment discrimination

1

and hereby sues the City of Annapolis, Former Police Chief, Michael Prestoop (in his official capacity) and Former Acting Police Chief, Scott Baker (in his official capacity) (all hereinafter collectively, "Defendants").   In support of her causes of action, Plaintiff states as follows:

## I. <u>PARTIES</u>

1. The Plaintiff herein is CYNTHIA HOWARD FREEMAN an adult citizen of the United States and a resident of Millersville, Anne Arundel County, Maryland.

2. Defendant, City of Annapolis (hereinafter "City") is the Capital of Maryland and is located in the County of Anne Arundel, Maryland.  The City is governed by an elected Mayor, an elected City Council, and an appointed City Manager who have responsibility for the administration of all agencies within the city including, but not limited to, the Annapolis Police Department ("APD"), Human Resources Department ("HR"), and the Annapolis Office of Law ("Law Office").  The City of Annapolis is incorporated under Maryland law and has the capacity to sue and be sued.

3. At all relevant times, Defendant City has maintained and controlled the City of Annapolis Police Department as a duly constituted police agency headquartered at 199 Taylor Avenue, Annapolis, Anne Arundel County, Maryland 21401, with powers granted pursuant to the laws of the State of Maryland, the City of Annapolis, and other applicable federal, state, and local laws.

4. The City of Annapolis Police Department (hereinafter "APD"), is a uniformed police department headed by the Chief of Police that operates under the direction of the governing bodies of the City, and through its command structure, was and is responsible for establishing customs, policies and standing orders controlling the actions of its police officers— including Police Chiefs, Defendants Prestoop and Baker.  The APD was also responsible for

providing for their training and supervision.

5. Defendant, Michael Prestoop, served as the Chief of Police for the APD with the authority to appoint Police Captains when the claims herein arose. Defendant Prestoop is being sued in his official capacity.

6. Defendant, Scott Baker, served as the Acting Police Chief for the APD beginning February 8, 2017 until he became Chief of Police on June 19, 2017; both during and after these events occurred. Defendant Baker is being sued in his official capacity.

7. At all relevant times, Defendant City employed Defendants Prestoop and Baker as duly authorized law enforcement officers in the Annapolis Police Department, who both acted at all relevant times within the course and scope of their employment and under color of state law.

8. The Plaintiff was employed by Defendant APD in Annapolis, Anne Arundel County, Maryland and was a subordinate to both Defendants Prestoop and Baker when the claims herein arose.

9. At all relevant times, each and every Defendant acted under color of state law.

## II. BASIS, JURISDICTION AND VENUE

10. This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et. seq*., §20-602, Annotated Code of Maryland, §6-1-10, Anne Arundel County Code, 2005.

11. This Court has jurisdiction over the subject matter of Plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*.

12. Venue is proper in this Court because the unlawful employment practices alleged herein were committed in the State of Maryland within this judicial district.

## STATEMENT OF CLAIM

13. Plaintiff, Cynthia Howard-Freeman ("Howard-Freeman") brings this action

pursuant to 42 U.S.C. § 2000e *et. seq.* (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991 to remedy acts of employment discrimination perpetrated against her by the Defendants. Plaintiff contends that APD officials discriminated against her because of her sex (female), color (black), race (African-American) and national origin (African-American) when they discussed rehiring her into the positions of Contractual Police Captain and Contractual Director, prior to her retirement, in violation of the City's guidelines regarding contractual positions, and rescinded both offers to reemploy her after retirement; but rehired other retirees that are not members of her protected class, after discussing their contractual positions with them prior to their actual retirements.

## FACTUAL ALLEGATIONS

The Plaintiff hereby realleges the statements and allegations contained in all proceeding paragraphs, and incorporates them as though they were fully set forth herein.

14. Plaintiff, Cynthia Howard Freeman, ("Plaintiff" or "Captain Howard") an African-American female, began her employment with the APD on April 3, 1987 as a Police Officer.

15. During her tenure with the APD she ascended the ranks and was the <u>first</u> African-American female promoted to Sergeant, and the <u>only</u> African-American female reaching the rank of Captain on November 25, 2008.

16. In 1991, she was also the only female appointed to the APD's Special Weapons and Tactics ("SWAT") Team and received numerous commendations for crime reduction and community service.

17. During the time relevant to this claim, Plaintiff served under the leadership and supervision of two Police Chiefs: 1) Defendant, former Police Chief Michael Pristoop, who

served as Police Chief from July 1, 2008 through March 25, 2017; and 2) Defendant, former Police Chief Scott Baker, who served as Acting Police Chief from February 8, 2017, through June 19, 2017, and was confirmed by the City Counsel as Police Chief serving until July 1, 2019.

18. When the events herein occurred, Defendant APD operated with 6 Lieutenants, 3 Captains, 1 Major and 1 Chief pursuant to Article VI, Section 2 of the Charter of the City of Annapolis, the "appointing authority" for the positions within the APD; with its Police Chief having the authority to appoint 3 exempt service Captain positions. (Exhibit 1).

19. As a part of the City's Police and Fire Retirement Plan ("Plan"), sworn police and fire personnel have the option to elect participation in the DROP program beginning on the date of eligibility for normal retirement, which is 20 years. (Exhibit 2)[1]

20. A significant advantage of the programs is that a participant can agree to delay receipt of retirement benefits while continuing to work. Participants receive the accumulated retirement benefit from the period of participation at retirement. The DROP program requires retirement upon the expiration of the term of DROP participation. *Id.*

21. On March 1, 2014, Captain Howard elected to participate in DROP. As a DROP participant, she delayed her normal retirement and benefits at 27 years and continued working for an additional period of 3 years.

22. Recognizing Captain Howard's exemplary service and benefit to the APD, prior to her retirement, Defendant Pristoop, approached her and asked that she come back to the APD after her retirement as a Contractual Police Captain.

23. This practice was not uncommon, routinely occurred, and appointments into contractual positions were openly discussed in APD Command Staff Meetings for retiring

---

[1]. The attached portion of the City of Annapolis Police and Fire Retirement Plan are Amended and Restated effective July 1, 2015, subsequent to when Plaintiff entered the Plan; and is provided only as information about the Plan in general.

employees of the APD.

24.     The City's Policy on Contractual Employment ("Policy") provides guidance on the usefulness of contractual employment and the city's uniform practice for the creation and administration of contractual employment when it is necessary to fulfill staffing needs. (Exhibit 3)

25.     Contractual positions within the APD however are not obligatory request but require written approval from the City Manager, the Finance Committee and the City Council in addition to funding approval prior to creating and offering the contractual position. *Id.*

26.     On or about February 6, 2017, Defendant Prestoop formally offered Captain Howard a contractual Captain position.

27.     On February 8, 2017, Defendant Prestoop was fired and Defendant Baker became Acting Police Chief.

28.     On February 9, 2017, Captain Howard was approached by Defendant Baker and was again asked to return to the APD after her retirement as a Contractual Police Captain. During this discussion, Captain Howard's salary of $126,035.63 was confirmed along with benefits. (See Exhibit's 4, 5)

29.     The contract was approved by and prepared at the request of Tom Andrews while serving in his official capacity as the City's Manager. *Id*

30.     Ashley Leonard, who was employed as an Assistant City Attorney, in the City's Law Office when the claims herein arose, prepared the Contract. *Id.*

31.     Defendant Baker requested that the terms of the contract be for one year and renewable however, the term of the contract had to be commensurate with employee contracts aligning with the fiscal year and annual budget reflecting an initial term, April 17, 2017 – June

30, 2017. (See Exhibit's 4, 5)

32. In anticipation of Captain Howard's return to the APD Defendant Baker also verified with the police training commission that she would retain her police powers pursuant to Section 2.36.020 of the City Code and would be required, as other officers, to receive in service training and firearms qualification. (Exhibit 4)

33. On February 8, 2017, Defendant Pristoop was fired from his position, as Police Chief and Defendant Baker became the Acting Chief of Police.

34. On or about February 13, 2017, Captain Howard was presented with the contract for the Contractual Police Captain position for review.

35. On or about February 24, 2017, Captain Howard signed and personally delivered the executed contract to the City's Office of Law, anticipating returning to the APD on April 17, 2017 in the position of Contractual Police Captain. (Exhibit 5)

36. On February 28, 2017, Captain Howard worked her last day at the APD, officially retiring on March 1, 2027 as required by DROP; and turned in all of her city issued equipment, including her guns and uniforms but was allowed to leave some personal items in the office that she was to return to.

37. On or about March 28, 2017, Defendant Baker went to Captain Howard's home and informed her that she could not return as "Captain" because the position was discussed with her prior to her retirement in violation of guidelines for contractual employees so he would have to bring her back in the contractual position of "Director." Defendant Baker asked Captain Howard to "consider the contractual Director position and let him know her decision" even though is would significantly diminish her substantive job responsibilities, and stressed his "need and desire" for her to return but could not further discuss the details of position with her until "45

days" after her retirement."

38. During the conversation on March 28, 2017, Captain Howard asked when the 45-day period would begin and Defendant Baker indicated that it would begin when she picked up her personal items from the office.

39. On or about March 31, 2017, Captain returned to her APD office and removed her personal items.

40. Other APD employees were rehired into their same positions, with the same position titles, on a contractual basis after their retirements; even though the positions were discussed with them prior to their retirement dates and they were not required to remove their personal items.

41. On or about April 1, 2017, Plaintiff received her first retirement benefit payment.

42. On or about April 3, 2017 Captain Howard contacted Defendant Baker indicating that she would accept the contractual "Director" position and he indicated that looked forward to speaking with her in the next "45 days."

***Discrimination – Race, Color, National Origin***

43. On or about June 2, 2017, approximately 60 days after not hearing from Defendant Baker, Captain Howard contacted him requesting a start date for the contractual Director position; and he stated that he was "sorry" and did not have the vacancy and would be appointing a fourth Captain as "a community service bilingual position" and she "would not qualify for the position either " because of her race, color, and national origin.

44. On or about November 1, 2017, Plaintiff learned that a white male, Brian Della, who was less qualified than she, had less rank and seniority, and not a member of her protected class was selected to be "Acting Captain" for Defendant APD; and there was not a contractual

Director position even though Defendant Baker offered her the position.

45. Defendants showed a clear discriminatory animus toward the Plaintiff when offers for both the "Captain" and "Director" positions were rescinded because they were discussed with her prior to her retirement violating City contractual guidelines; while other retirees who were a different color, race, and national origin and not members of Captain Howard's protected class, and had discussed their contractual positions prior to their retirement were treated more favorable than she and allowed to fill contractual positions.

46. The Defendants rescinding contractual employment to Captain Howard post retirement because of discussions about the position prior to her actual retirement was highly irregular, pretextual, deviated from all past contractual rehires post retirement; and was only applicable to her, a Black, African-American female.

47. The Defendants rescinded their offer of "Captain" to the Plaintiff and also failed to rehire her on a contractual basis in the position of "Director" because the vacancy did not exist; and also asserted that she could not be hired into a newly created fourth Captain position because it was as a "community service bilingual position" for which she did not qualify because of her race, color, and national origin however there is absolutely no doubt that Captain Howard was qualified for a Captain and/or Director position.

***Discrimination - Sex***

48. Captain Howard experienced racism and discrimination in the implementation of an unenforced policy in the requirement to not discuss a contractual rehire position prior to her actual retirement in violation of the City's guidelines because of her sex.

49. Captain Howard successfully performed her duties for 30 years and during that time she was the only Black, African-American female to reach the rank of Police Captain, the

only female appointed to the APD's SWAT Team; and the first African-American female promoted to the rank of Sergeant in the APD; yet, the Defendants subsequently selected a less qualified, less experienced, white male, junior in seniority to her to fill the position of Acting Captain and subsequent Captain position.

50. The Defendants decision to not rehire Captain Howard as a contractual Captain post retirement irreparably harmed the professional reputation and career of its most decorated Black, African-American female and violates Title VII.

51. Defendant APD employee demographics reflect an observable pattern of excluding Black, African-American females from being promoted and/or hired into high-ranking leadership positions; and no other Black, African-American female has ascended to the rank of Captain since Captain Howard achieved this rank on November 25, 2008 more than 14 years ago.[2]

52. On December 5, 2017, Captain Howard timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")(Charge No. 531-2018-00597C) in which she alleged that the Defendants discriminated against her in violation of Title VII subjecting her to discrimination based on her race, color, national origin, and sex.

53. On April 28, 2022, pursuant to Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e5, the EEOC investigated the charge, finding that discrimination occurred based on Plaintiffs race and sex but made no finding with respect to color and national origin. (A true and accurate copy of the Letter of Determination is attached hereto as Exhibit 6)

---

[2.] Between 2010 and 2015 several lawsuits were filed by officers of color charging The City of Annapolis with departmental racism in the Circuit and Federal Courts alleging they were bypassed for promotions and were not treated the same as white officers and subject to inherent bias as it relates to gender and a hostile work environment. See 0:15-cv.pr-02121 Fourth Circuit Court of Appeals. Anne Arundel's police force is 82% white, while the county is 68% white as a whole according to 2010 census data.

54. The Parties participated in conciliation but were unsuccessful in resolution of these matters; and subsequently on August 24, 2022, the EEOC issued a letter of Failed Conciliation referring the charge to the Department of Justice ("DOJ". (A true and accurate copy of the Letter of Failed Conciliation is attached hereto as Exhibit 7)

55. Plaintiff was issued a Notice of Right to Sue letter, by the DOJ dated October 26, 2022 that was received on October 27, 2022. (A true and accurate copy of the DOJ "Dismissal and Notice of Rights" is attached hereto as Exhibit 8).

56. The Plaintiff has satisfied all statutory prerequisites for filing this action.

57. The Plaintiff has filed this action under Title VII within ninety (90) days after receipt of her "Notice Of Right to Sue" letter from the DOJ.

58. Defendants discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige to her professional reputation and career.

59. Defendants actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. §1981a.

60. Defendants have engaged in discriminatory practices with malice and reckless indifference to Captain Howard's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

61. Defendants treated Captain Howard less favorably than other retirees who were rehired into contractual positions even though they had discussed their positions pre-retirement and were not members of her protected class; and the these actions were pretextual and unlawful discrimination.

## COUNT I
**Discrimination**
*(Race, Color, National Origin)*

The Plaintiff hereby realleges the statements and allegations contained in all proceeding

paragraphs, and incorporates them as though they were fully set forth herein.

62. The Defendants have engaged in a pattern of racial discrimination against Black, African-American female employees.

63. Defendants engaged in intentional race, color, and national origin discrimination in the terms and conditions of Captain Howard's contractual re-employment, when they failed to rehire her into the contractual positions of Captain and Director after discussing the positions with her prior to her retirement while rehiring other white retirees who are not members of her protected class with whom they had discussed contractual positions with prior to their rehire and include: Eric Neutzling (white male); Timothy Seipp (white male); William Johns (white male) Joanne Jones (white female); and Douglas Remaly, Deputy Fire Chief (white male), who retired the same date as Captain Howard and was returned to his same position, which had been discussed prior to his retirement, via contract. (Exhibit 9)

64. The effect of Defendants unlawful employment practices deprived Captain Howard of equal employment opportunities afforded to others who are not Black, African-Americans and otherwise adversely affect her status as an employee, because of her race, color, and national origin.

65. After Captain Howard retired from APD and the contractual positions of Captain and Director were rescinded she secured employment with the Anne Arundel County Police Department as Director of Youth Activities Programs, at a substantial lower rate of pay in July 2017, resulting in further financial loss.

66. The Plaintiff has been treated less favorably than similarly-situated employees by Defendants in the terms and conditions of her employment because of her race, color and national origin.

67. Defendants' discriminatory practice caused Captain Howard harm, including severe emotional distress, and lost wages and benefits

68. Defendants' unlawful employment practices were intentional and done with malice and with reckless indifference to Captain Howard's rights under Title VII.

69. For the foregoing reasons, Defendants engaged in illegal discrimination against the Plaintiff and their conduct violates Title VII.

70. As a further direct and proximate result of Defendants violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq*. as described herein, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE the Plaintiff demands judgment against the Defendants jointly and severally in an amount in excess of $75,000.00, specific amount to be determined at trial, that will compensate her for violation of her rights under Title VII, compensatory damages and punitive monetary damages including lost wages, emotional distress, humiliation, and lost of professional reputation plus costs, attorneys fees, and interest from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

### COUNT II
### Discrimination
### *(Sex)*

The Plaintiff hereby realleges the statements and allegations contained in all proceeding paragraphs, and incorporates them as though they were fully set forth herein.

71. The Defendants have subjected Captain Howard to intentional sex discrimination with respect to the terms and conditions of contractual re-employment, when they failed to rehire her into the contractual position of Captain discussing the position with her prior to her

retirement while rehiring, Douglas Remaly, Deputy Fire Chief (white male), also a participant in the DROP program, who retired the same date as Captain Howard and was returned to his same position, which had been discussed prior to his retirement, via contract.

72. Defendants have treated Captain Howard less favorably than male employees in the terms and conditions of her employment, because of her sex.

73. Defendants' unlawful employment practices were intentional and done with malice and with reckless indifference to Captain Howard's rights under Title VII.

74. The Defendant's conduct as alleged herein constitutes sex discrimination against the Plaintiff in violation of Title VII.

75. The stated reasons for the Defendants conduct were not the true reasons, but instead were a pretext to hide the Defendant's discriminatory animus against the Plaintiff, because she is an African-American female.

76. Defendants' discriminatory practice caused Captain Howard harm, including severe emotional distress, and lost wages and benefits

77. For the foregoing reasons, Defendants have discriminated against Captain Howard in violation of Title VII, 42 U.S.C. § 2000e-3(a).

78. As a further direct and proximate result of Defendants violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq*. as described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

WHEREFORE the Plaintiff demands judgment against the Defendants jointly and severally in an amount in excess of $75,000.00, specific amount to be determined at trial, that will compensate her for violation of her rights under Title VII, compensatory damages and

punitive monetary damages including lost wages, emotional distress, humiliation, and lost of professional reputation plus costs, attorneys fees, and interest from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

***Exhaustion of Federal Administrative Remedies***

79. Plaintiff exhausted all federal administrative remedies prior to the commencement of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

A. Grant judgment in Captain Howard's favor against the Defendants, individually and/or jointly and sverally and declare that Defendants have violated Title VII of the Civil Rights Act of 1964 42 U.S.C. §§2000e *et. seq.* and are liable to the Plaintiff;

B. That the Court award all appropriate monetary relief, including a grant of full back pay to the Plaintiff;

C. That the Court award Plaintiff any prejudgment interest on the amount of lost wages and benefits determined to be due;

D. That the Court grant Plaintiff the value of all employment benefits she would have enjoyed had she not experienced discrimination;

E. That the Court grant Plaintiff compensatory damages for humiliation, emotional distress, and other damages to her professional reputation and career caused by Defendants conduct resulting from the discrimination alleged in this complaint, in an amount not less than $100,000.00 but up to the statutory maximum.

F. That the Court grant Plaintiff punitive damages for Defendants malicious and recklessly indifferent conduct;

G.      That the Court order Defendants to develop and implement appropriate and effective measures to prevent discrimination, including but not limited to implementing appropriate policies that provide jobs and promotional opportunities at APD for Black African-American women, and implement adequate training to APD management officials;

H.      That the Court order Defendants to adopt a fair, clear, meaningful, and well-publicized written policy regarding the City's policy on contractual employment discussions prior to an employee's actual retirement.

I.      That the Court order Defendants to modify its existing discrimination policies to include meaningful training, well-publicized policies describing the responsibilities of all supervisors and management staff to prevent discrimination based on race, color, national origin and sex.

J.      That the Court order Defendants to take other appropriate nondiscriminatory measures to overcome the effects of discrimination.

K.      That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees pursuant to the Title VII, and/or 42 U.S.C. § 1988;

L.      That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct; and

M.      That the Court grant Plaintiff all other relief it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable in this action.

| | |
|---|---|
| January 18, 2023 | Respectfully submitted |
| | _____/s/_____ |
| | Angela J. Davis (Bar #15984 |
| | The Davis Law Group |
| | P.O. Box 6775 |
| | Columbia, MD 21045 |
| | (301) 362-4575 |
| | (301) 362-3391 (Fax) |
| | ajdladylaw@aol.com |
| | |
| | *Counsel for Plaintiff* |

## CERTFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____/s/\*_____
Cynthia Howard Freeman

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served on all registered defendants through their counsel of record through the CM/ECF system to their electronic addresses of record on this 18th day of January 2023 if they are registered users or, if they are not, by electronic mail and by placing a true and correct copy in the United States mail to their address of record:

City of Annapolis
City of Annapolis Office of Law
D. Michael Lyles, Esquire, City Attorney
160 Duke of Gloucester Street
Annapolis, MD 21401
160 Duke of Gloucester Street
Annapolis, MD 21403

Michael Prestoop, Former Police Chief
c/o Annapolis Police Department
199 N. Taylor Avenue
Annapolis, MD 21401-3496

Scott Baker, Former Acting Police Chief
c/o Annapolis Police Department
199 N. Taylor Avenue
Annapolis, MD 21401-3496

        Respectfully submitted,

        /s/Angela J. Davis
        Angela J. Davis (Bar #15984
        The Davis Law Group
        P.O. Box 6775
        Columbia, MD 21045
        (301) 362-4575
        (301) 362-3391 (Fax)
        ajdladylaw@aol.com

        *Counsel for Plaintiff*