IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CYNTHIA HOWARD FREEMAN, | * |
| *Plaintiff*, | * |
| v. | * |
| CITY OF ANNAPOLIS, et al., | *   Civil No. 23-126 PJM |
| *Defendants*. | * |

## MEMORANDUM OPINION

This is an employment-law case alleging discrimination on the basis of race, color, and sex in violation of Title VII of the Civil Rights Act of 1964. ECF No. 1. Plaintiff Cynthia Howard Freeman ("Howard"[1]) filed an original Complaint consisting of two counts—Count I alleging race, national origin, and color discrimination and Count II alleging sex discrimination. *Id.* The original Complaint was brought against the City of Annapolis and several members of the City's police department. *Id.* at 1. Howard requested compensatory and punitive damages, including backpay and forward pay she says she would have received but for the City's allegedly discriminatory conduct. She also asks for an injunction requiring the City to adopt more robust antidiscrimination policies in employment. *Id.* at 11–13.

The original Defendants filed a Motion to Dismiss (ECF No. 13), and a hearing on Defendants' Motion was held on September 28, 2024. At the conclusion of the hearing, the Court dismissed with prejudice Howard's claim for discrimination on the basis of national origin, her claim for punitive damages, and her claims against the individual police officer Defendants. ECF

---

[1] Plaintiff Cynthia Howard Freeman is consistently referred to as "Howard" in both parties' filings. Following this practice, the Court refers to her as "Howard."

1

No. 22. Following the Court's ruling, only Howard's claims alleging race, color, and sex discrimination against the City remain. *See id.*

On May 13, 2024, the City filed its present Motion for Summary Judgment, which has been fully briefed. ECF Nos. 33, 34, 38. The Court finds no hearing necessary. D. Md. Local R. 105.6. For the following reasons, the Court **GRANTS** the City's Motion for Summary Judgment (ECF No. 33).

## I. BACKGROUND

The following facts are undisputed. The Annapolis Police Department ("APD") is a police agency that operates within the City of Annapolis ("the City"). ECF No. 33 at 2. Howard, an African-American female, was hired as a Police Officer in the APD on April 3, 1987, and was promoted to Captain on November 25, 2008 by then-Police Chief Michael Pristoop. ECF No. 1 ¶¶ 13–15; ECF No. 33-10 at 21.

The City's Police and Fire Retirement Plan ("Retirement Plan") allows sworn police and fire personnel to participate in the City's Deferred Retirement Option Program ("DROP") on the date of their "normal" retirement. *See* ECF No. 33-15. By participating in DROP, participants agree to delay the receipt of their retirement benefits as they continue to work. *Id.* Then, upon retirement, participants receive a lump sum of the benefits accrued while they were in DROP. *Id.* According to the City, one of the benefits of DROP is to allow for the City to plan ahead for upcoming vacancies and to provide an opportunity to develop a diversity recruitment strategy. ECF No. 34 at 4; ECF No. 24 at 4. Howard entered DROP on March 1, 2014. ECF No. 33 at 4; ECF No. 34 at 3.

Although the exact date is unknown, approximately eighteen months before Howard's retirement, Alderwoman Sheila Finlayson approached Howard and asked if she would be willing

to return to the APD as a Captain after her retirement. ECF No. 33-17 at 31–32, 37. Shortly after speaking with Howard, Finlayson discussed this proposition with Pristoop. *Id.* About a month later, on February 8, 2017, for reasons immaterial to the present Motion, Pristoop was fired. ECF No. 33 at 4-5.

Howard claims that pre-retirement discussions for her post-retirement hiring were commonplace at the APD and at the Annapolis Fire Department. She identifies five other individuals who she claims participated in pre-retirement discussions and were later rehired on a contractual basis—those five individuals will be further discussed presently.

At the time of his termination, Pristoop had not made a decision about rehiring Howard. ECF No. 33-10 at 29–30. On February 9, 2017, Pristoop's successor, Scott Baker was appointed as Acting Police Chief, and soon thereafter, Baker was made aware of the prior discussions between Howard, Finlayson, and Pristoop about Howard's post-retirement plans to return to work for the APD. ECF No. 33-11 at 26–27. Baker asked Ashley Leonard, an Assistant City Attorney in the City's Office of Law, to draft an employment agreement for Howard's "Contractual Captain" position. ECF No. 33-21. Howard signed the new employment contract, but it was never countersigned by any City authority.

On March 1, 2017, Howard retired and began receiving retirement benefits—including the lump sum that had accrued while she was enrolled in DROP. ECF No. 33-9; ECF No. 33-22.

Following Howard's retirement, Acting Chief Baker grew concerned about her rehire on a contractual basis because members of the police union suggested to him that Howard's return would be in violation the City's so-called "forty-five-day rule." ECF No. 33-11 at 91–92. That rule apparently prohibits soon-to-retire employees from discussing post-retirement plans to return to

City employment for forty-five days after they retire. The purpose of the rule is supposedly to insulate the City's rehiring of a recently retired employee from IRS scrutiny.

Given these concerns, Baker sought advice from the City's Office of Law. *Id.* at 92–93. Assistant City Attorney Leonard eventually issued an opinion warning that because Howard had discussed her post-retirement return to the APD before she retired, the IRS might interpret Howard's retirement as a "sham retirement." *Id.* This, in Leonard's opinion, could lead to the City facing significant consequences, such as the disqualification of the Retirement Plan as well as adverse tax penalties. *Id.*[2]

Reacting to these concerns, Baker met with Howard at her home on March 28, 2017, withdrew the offer for a Contractual Captain position, and explained his concerns regarding the pre-retirement discussions occurring prior to forty-five days following her retirement. *Id.* at 45–46, 93–94; ECF No. 33-9 at 39–41. Baker then offered Howard the opportunity to be rehired as a civilian director on a contractual employment agreement (hereinafter "Contractual Director"), which Howard immediately rejected. ECF No. 33-11 at 49–50.

On March 31, 2017, Howard and Baker once again discussed the Contractual Director position, but the offer remained unaccepted. ECF No. 33-9 at 57–58. Finally, in June 2017, nearly three months after their initial meeting on March 29, 2017, Howard connected with Baker, inquiring about the Contractual Director position. *Id.* at 61. Baker informed Howard that he was previously mistaken in believing that the position was available. *Id.* As it turned out, the position was intended to fill a vacancy that never materialized because the incumbent never retired.

---

[2] *See* Letter from Michael Roach, Chief Counsel (Tax Exempt & Government Entitles), Department of the Treasury Internal Revenue Service, to Paul Sarbanes, Senator, United States Senate, (Nov. 30, 2000) (on file with the Department of the Treasury Internal Revenue Service) ("If a 401(k) plan makes a distribution to a participant due to a separation from service and it is determined that a separation from service did not actually occur, the 401(k) plan may be disqualified under 401(a) and 401(k). Plan disqualification results in adverse tax consequences to the employees participating in the plan and to their employer.").

4

Ultimately, Howard was never rehired by the City in any capacity. *Id.*; ECF No. 33-11 at 67.

During his tenure as Acting Police Chief, Baker never hired anyone as a Contractual Captain nor rehired anyone who retired from sworn rank. *Id.* at 94.

On January 18, 2023, Howard brought this suit. ECF No. 1 at 1.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if there exists no genuine dispute as to material facts and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A dispute over material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence in light most favorable to the nonmoving party; however, a nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The court may grant the motion when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.'" *Anderson*, 477 U.S. at 247 (quoting Fed. R. Civ. P. 56(c)).

## III.  DISCUSSION

Title VII of the Civil Rights Act of 1964 prevents employers from discriminating on the basis of race, color, and sex in deciding to hire, fire, promote, or otherwise alter an employee's terms and conditions of employment. 42 U.S.C. § 2000e *et seq.* Where plaintiffs allege that they have been discriminated against by their employer in violation of Title VII, they may present either direct or circumstantial evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802–05 (1973). If the plaintiff proffers only circumstantial evidence, courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green. Id.*

Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate "some legitimate, non-discriminatory reason" for its actions. *Id.* If the defendant does so, the burden shifts back to the plaintiff to present evidence that the reason proffered by the defendant is mere pretext to conceal the defendant's discriminatory animus. *Id.* at 804.

### A. The City Has Cited Legitimate, Non-Discriminatory Reasons for Its Actions, and Howard Has Failed to Demonstrate that Those Reasons are Pretextual.

Setting aside for the moment the question of whether Howard has established a *prima facie* case, the Court concludes that as to each of Howard's Counts, the City has cited a legitimate, nondiscriminatory reason for declining to rehire Howard in a contractual capacity. The Court additionally concludes that Howard has not met her burden to demonstrate that the City's reasons are pretextual.

*First*, as to Count I of Howard's Complaint, which alleges that she was deprived of the opportunity to return to the APD as a Contractual Captain because of race and color discrimination, the City points out that Baker decided to rescind the offer for the Contractual Captain position to comply with Assistant County Attorney Leonard's legal opinion. Recall that Leonard's legal opinion warned that rehiring Howard as a contractual employee after she held pre-retirement discussions before retiring could present significant problems for the City's Retirement Plan if the IRS determined that her retirement was a sham. Race and color played absolutely no part.

In her attempt to prove that the Baker's reliance upon Leonard's legal opinion was pretextual, Howard points to the five proposed comparators who, she alleges, discussed post-

retirement plans before leaving the APD and who were later rehired on a contractual basis. *See* ECF No. 34-1 at 23. This effort fails, however, because the undisputed facts show that, before becoming convinced by legal counsel of a possible violation of the forty-five-day rule, Baker was fully on board with hiring Howard as a Contractual Captain. Howard has presented no evidence that would create a genuine dispute of material fact as to Baker's motivations for seeking the legal opinion from the City's Office of Law. Again, she has presented no evidence suggesting that discriminatory animus, rather than suggesting Assistant City Attorney Leonard's legal opinion somehow moved the City to treat her differently than her proposed comparators. She asks the Court to peer behind the City's obviously legitimate reason for the non-hire based on speculation alone, which is insufficient to defeat summary judgment.

*Second*, as to Count II of Howard's Complaint, which alleges that she was deprived of the Contractual Director position on account of her gender, the City explains that this position was never truly available, and that Baker misunderstood the lack of a vacancy when he made the offer. Gender discrimination was nowhere in evidence.

Instead of presenting affirmative evidence of the City's pretext, Howard attempts to pick apart the evidence the City gave in support of its legal opinion. First, Howard contends that Baker's Contractual Director offer "was a sham." *Id.* at 27. Without citing any evidence to support her claim, Howard assumes that, given Baker's hiring powers, he *must* have known that the Contractual Director position was unavailable. Pure speculation. Next, Howard takes issue with the fact that Baker did not give her a deadline by which she was required to respond to the offer for the Contractual Director position. This recasting of events runs headlong into evidence presented by the City, however, because Baker testified at his deposition—and Howard concedes—that she initially refused Baker's offer of that position outright. Although Baker

encouraged Howard to "think about" the offer following her rejection, that hardly suggests that he knew that the incumbent would not retire at the expected time. In fact, it suggests the very opposite.

Howard has failed to carry her burden to show that the City's proffered reasons for its denial of both positions were made pretextually, such that no genuine dispute of material fact would need to be resolved at trial. The City is entitled to summary judgment on Count I.

## B. Howard Has Failed to Establish a *Prima Facie* Case as to Either of Her Counts.

The City is entitled to summary judgment on Counts I and II for the additional reason that Howard has failed to establish a *prima facie* case as to either of her Counts. In a complaint alleging employment discrimination under Title VII, the plaintiff has the burden of establishing a *prima facie* case by showing: (1) she is a member of a protected class, (2) there was an open position for which she applied, (3) she was qualified for the position, and (4) she was rejected from the position under circumstances that give rise to an inference of discrimination. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996). She has not met several of these elements.

### Counts I & II – Contractual Captain

It is undisputed that Howard satisfies the first element of a *prima facie* claim as to both of her Counts because, as an African-American woman, she belongs to protected classes. Moreover, there is no genuine dispute that, at the time Howard applied for and was initially offered the Contractual Captain position, the position was apparently "available." The parties, however, dispute whether the Contractual *Director* position was in fact actually "available" within the meaning of a *prima facie* case because, in the end, the position was never vacated by its incumbent. Since there is no dispute that the incumbent never left office, that suffices to sink Howard's claim that she was denied access to an available position. It is not necessary to decide if Howard satisfies

the third element—that she was qualified for both positions she was "offered." ECF No. 33 at 17; ECF No. 34 at 13. There was no position. Period.

In any event, Howard cannot meet the fourth element of a *prima facie* case as to either Count I or Count II because the evidence she presents in no way creates an inference that she was denied either position because of unlawful discrimination. As to Count I, Howard relies exclusively on comparator evidence to support her race and color discrimination claims. She cites to the cases of three white male police officers and one white female administrative worker, all of whom are said to have discussed contractual positions with the City before their retirements, all of whom were subsequently rehired on contractual bases after retirement. ECF No. 33 at 18.

The Fourth Circuit recently reiterated that a plaintiff's failure to show that the supervisor(s) who made the decision resulting in the employment action as to the claimant were the same supervisor(s) as to the purported comparator is "independently fatal" to a comparator claim. *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 716 (4th Cir. 2024). Here, the supervisor who made the decision not to rehire Howard was not the supervisor who made the decisions to rehire each of the comparators Howard identifies. This failure to identify comparators who shared the same supervisor, on its own, undercuts Howard's argument. *See id.* The attempted use of comparator evidence raises no inference of discrimination.

Count II of Howard's Complaint, which alleges gender discrimination with respect to her loss of the Contractual Director position falters similarly. She again relies exclusively on comparator evidence—pointing to Douglas Remaley, Deputy Fire Chief (a white male), as a comparator. Here, too, the supervisor who made the rehiring decision as to Remaley was not the supervisor who made the decision not to rehire Howard. Fire Chief Stokes rehired Remaley, whereas Acting Police Chief Baker was responsible for the hiring decision as to Howard. *See id.*

Remaley is an inappropriate comparator. While he apparently was a participant in DROP during the same time Howard was and was then rehired by the Annapolis Fire Department around the same time that Howard retired and sought to be rehired, ECF No. 33 at 18, Howard presents no admissible evidence to support her claim that Remaley in fact engaged in pre-retirement discussions, whereas Howard had clearly done so.

What Howard does offer in support of her Remaley-as-comparator theory is at best speculative and inadmissible hearsay. In her deposition, she testified that she "heard conversations" from firefighters that Remaley would be rehired, but she was unable to provide additional details as to who actually engaged in these conversations or when they occurred or whether the declarants' even had first-hand knowledge of the fact that pre-retirement discussions had actually taken place. ECF No. 33-9 at 73. The only other "evidence" suggesting there might have been pre-retirement conversations by Remaley is Finlayson's mere *assumption* that Remaley and then-Chief Stokes must have discussed Remaley's rehiring prior to retirement.

Both Howard's and Finlayson's testimonies are rooted in inadmissible hearsay. *See* Fed. R. Evid. 802. Indeed, even the supposed declarants were apparently relying on hearsay and speculation, in effect hearsay was built upon hearsay, clearly insufficient to defeat summary judgment. *See Bandy v. City of Salem*, 59 F.4th 705, 712 (4th Cir. 2023). Gender discrimination is nowhere even hinted at. Without relying on "more than conclusory allegations [or] mere speculation," Howard has not met her burden of establishing the fourth element of a *prima facie* case—that she was rejected from the position under circumstances that give rise to an inference of discrimination. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

To the extent that Howard relies upon a declaration by former coworker Kevin Freeman that characterizes a "generalized culture of racial discrimination" within the APD, which consists

of vague accusations about the supposed wrongful machinations of one Corporal Truitt to ensure Howard did not return to APD, the Court finds Freeman's declaration far too speculative to support Howard's claims. Generalized allegations referring to a discriminatory atmosphere (about what? gender? about race? other?) at APD have no relevance to Howard's particular situation. Corporal Truitt's conjectures have no place in this case. There is no evidence that he had authority to influence or that he in fact ever influenced Acting Chief Baker's hiring decisions in general, much less as to Howard in particular. Once again, inadmissible hearsay and speculation sink Howard's boat.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the City's Motion for Summary Judgment (ECF No. 33) and will **DISMISS WITH PREJUDICE** the remaining claims in Howard's Complaint.

A separate Order will **ISSUE**.

November 13, 2024

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**